This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

**v.**                                                    **No. 31,569**

**CLAUDIA ARGUELLO,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF ROOSEVELT COUNTY**
**Drew D. Tatum, District Judge**

Gary K. King, Attorney General
Santa Fe, NM

for Appellee

Jacqueline Cooper, Chief Public Defender
Carlos Ruiz de la Torre, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**BUSTAMANTE, Judge.**

Defendant appeals her convictions for aggravated driving while under the influence of intoxicating liquor (2nd offense) and for resisting, evading, or obstructing an officer. [RP 2, 97] Our calendar notice proposed to affirm, and Defendant filed a timely memorandum in opposition. We remain unpersuaded by Defendant's arguments and therefore affirm.

As an initial matter, we note that Defendant re-numbered the issues in the memorandum in opposition. For ease of designation, however, we continue to number the issues as was done in the notice.

In issues (1) and (2), Defendant continues to argue that the district court erred in denying her motions for directed verdict for the charges of aggravated DWI and resisting, evading, or obstructing an officer. [DS 11; MIO 8-14] We address first Defendant's conviction for aggravated DWI. [RP 48, 49, 90] *See* NMSA 1978, § 66-8-102(A)(D)(3) (2010). Officer Wyatt observed Defendant's pickup truck [DS 4], with Defendant in the driver's seat and Albert Ontiveros in the passenger seat. [RP 25; DS 5] While the officer did not observe the truck moving [DS 8], he observed that the truck's engine was running, with its lights activated and exhaust coming from the back of the truck. [RP 25] After Defendant and Ontiveros exited the truck [RP 26], Defendant approached Officer Wyatt. [RP 27] At this time, Officers Wyatt and Shank observed that Defendant exhibited signs of intoxication, as detailed in our

notice. [DS 4; RP 28, 33] Defendant refused to perform requested field sobriety tests [RP 28] and to submit requested chemical tests, even though Officer Wyatt read her the implied consent advisory and informed her that failure to submit to the tests could result in the revocation of her privilege to drive. [RP 28; DS 5]

We hold that the jury could have reasonably relied on the foregoing evidence to convict Defendant for aggravated DWI. *See State v. Sparks*, 102 N.M. 317, 320, 694 P.2d 1382, 1385 (Ct. App. 1985) (defining substantial evidence as that evidence which a reasonable person would consider adequate to support a defendant's conviction). Although the officers did not see Defendant's truck moving, motion of a vehicle is not a necessary element of DWI. *See State v. Reger*, 2010-NMCA-056, ¶ 5, 148 N.M. 342, 236 P.3d 654. Under a totality of the circumstances analysis, we conclude that the jury could have reasonably considered that the truck's engine was running with its lights activated and that Defendant was in the driver's seat, to determine that Defendant engaged in overt acts to show that she was in actual physical control of the truck with intent to drive. *See State v. Sims*, 2010-NMSC-027, ¶ 33, 148 N.M. 330, 236 P.3d 642 (adopting a "totality of the circumstances" test and listing non-exhaustive factors for the jury to consider in determining whether a defendant is in actual physical control and has a general intent to drive so as to endanger any person). While Defendant asserts that her comment to the officers that

3

she was cold [MIO 13] supports her defense that the engine was running not because she intended to drive, but instead so that she could use the vehicle's heater [MIO 11-12], the jury reasonably could have inferred otherwise. *Id.* ¶ 33 (recognizing that it is within the jury's prerogative to examine all the evidence in its totality and to weigh its credibility to determine whether the defendant was simply using the vehicle as a stationery shelter).

We next consider Defendant's conviction for resisting, evading or obstructing an officer. *See* NMSA 1978, § 30-22-1 (1981). Defendant approached Officer Wyatt while he was detaining Ontiveros and became belligerent – yelling at the officer [DS 4], using abusive language and profanity [RP 26-27, 29], and approaching the officer in a way that made him concerned for his safety – even though the officer told Defendant she was interfering and to stay back. [RP 27, 33] After the officer handcuffed Defendant, she continued yelling and physically resisting [MIO 10] by pushing up with her body. [RP 29] We conclude that the jury could have reasonably determined that Defendant resisted, evaded or obstructed the officer while he was in the lawful discharge of his duties. *See Sparks*, 102 N.M. at 320, 694 P.2d at 1385 (defining substantial evidence as that evidence which a reasonable person would consider adequate to support a defendant's conviction). We acknowledge Defendant's contentions that she was "rightfully outraged" [MIO 11] and that her conduct resulted

4

only in "minimal inconvenience" to the officer. [MIO 10-11] These contentions, however, do not detract from the determinative facts that Defendant continued to approach the officer while using abusive language and profanity, even though she had been instructed by the officer to stop her approach and stay back. *See State v. Diaz*, 121 N.M. 28, 29-32, 908 P.2d 258, 259-262 (Ct. App. 1995) (providing that resisting refers not only to a defendant's overt physical act, but also to the failure to act when refusing to obey lawful police commands); *City of Roswell v. Smith*, 2006-NMCA-040, ¶ 5, 139 N.M. 381, 133 P.3d 271 (affirming the defendant's conviction for obstructing an officer based on his conduct of refusing to leave a parking lot even though he had been instructed several times by officers to do so).

In issues (3) - (5), Defendant maintains that the district court erred in allowing the case against her to proceed even though the arrest warrant for Ontiveros, upon which the initial detention of Defendant and her vehicle was based, was allegedly invalid. [DS 11; MIO 4] Even assuming for purposes of discussion that Defendant adequately preserved this issue [MIO 5-6], we nonetheless remain unpersuaded by Defendant's argument. As detailed in our notice, the officer's testimony provides that he checked to make sure there was an outstanding warrant for Ontiveros prior to the stop. [DS 7; RP 28] In addition, information that the warrant had been quashed was not faxed to the police department until November 23rd, after the November 20th

detention and arrest of Defendant and Ontiveros. [RP 27, 30] Whether or not the warrant was still outstanding for purposes of justifying the stop was a matter for the district court to decide [RP 26-27], *see* Rule 11-104 NMRA (providing that preliminary evidentiary questions shall be determined by the court) and, given the foregoing, it was within the judge's prerogative to determine whether the arrest warrant was outstanding at the time of arrest. *See generally State v. Salas*, 1999-NMCA-099, ¶ 13, 127 N.M. 686, 986 P.2d 482 (recognizing that it is for the fact-finder to resolve any conflict in the testimony of the witnesses and to determine where the weight and credibility lay).

Moreover, even if the warrant had been quashed prior to Defendant's arrest, there is no indication that the officer was aware of this. Because the officer had information that the warrant was valid, the stop was justified. *See State v. Hubble*, 2009-NMSC-014, ¶ 22, 146 N.M. 70, 206 P.3d 579 (recognizing that a mistake of fact may provide the objective grounds for reasonable suspicion). Under this mistake-of-fact analysis, we note that Defendant generally asserts for the first time in her memorandum in opposition that the New Mexico Constitution affords her greater protection. [MIO 7] Assuming that this was preserved below [MIO 4], Defendant provides this Court with no specific argument in support of her assertion. *See generally State v. Leyva*, 2011-NMSC-009, ¶ 36, 149 N.M. 435, 250 P.3d 861

(discussing preservation requirements); *State v. Gonzales*, 2011-NMCA-007, ¶ 19, 149 N.M. 226, 247 P.3d 1111 (stating that "this Court has no duty to review an argument that is not adequately developed"). Moreover, as discussed, it was nonetheless within the district court's prerogative to determine that the warrant was valid, without having to rely on a mistake-of-fact analysis.

In issues (6) and (7), Defendant continues to argue that the prosecutor engaged in misconduct when he misstated the law during rebuttal by stating, "If you find that abusive language alone can obstruct an officer in his duties then it is absolutely relevant." [DS 12; MIO 14; RP 40] As discussed in our notice, the prosecutor did not rely solely on Defendant's abusive language to argue that Defendant was guilty. The prosecutor also stated, "[we] don't just have abusive language in this case" and referred to the officer's belief that his safety was compromised. [RP 40] Even assuming that abusive language alone is not enough to obstruct an officer in his or her duties, the prosecutor did not rely on Defendant's abusive language alone for her conviction – either during the presentation of evidence at trial or during the rebuttal. For this reason, we conclude that the prosecutor did not engage in misconduct.

In conclusion, based on the analysis set forth in our notice and above, we affirm.

**IT IS SO ORDERED.**

_____

**MICHAEL D. BUSTAMANTE, Judge**

**WE CONCUR:**


_____

**LINDA M. VANZI, Judge**


_____

**TIMOTHY L. GARCIA, Judge**