# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: August 4, 2016

**NO. 34,347**

**SHERRY MILLIRON,**

      Plaintiff-Appellant,

v.

**THE COUNTY OF SAN JUAN,**
**THE SAN JUAN SHERIFF'S DEPARTMENT,**
**and RICHARD STEVENS**,

      Defendants-Appellees.


**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**Daylene Marsh, District Judge**


Gilpin Law Firm, LLC
Donald G. Gilpin
Albuquerque, NM

for Appellant

Potts & Associates
Amy L. Glasser
Albuquerque, NM

Law Offices of Mark J. Klecan
Mark J. Klecan
Albuquerque, NM

for Appellees

# OPINION

**WECHSLER, Judge.**

{1} Appellant Sherry Milliron appeals from the district court's dismissal of her negligence claim, brought pursuant to the New Mexico Tort Claims Act, NMSA 1978, Sections 41-4-1 to -27 (1976, as amended through 2015), against Appellees San Juan County, San Juan County Sheriff's Department, and San Juan County Sheriff's Department Deputy Richard Stevens. The district court ruled that, under any legal theory, the facts alleged were insufficient to establish a waiver of the governmental immunity granted by Section 41-4-4(A). Appellant argues on appeal that the district court's Rule 1-012(B)(6) NMRA dismissal was error because the complaint pleaded facts entitling Appellant to relief for damages caused by Appellees' negligence. Appellant also argues that the district court's ruling indicates a failure to accept the facts alleged as true as required by Rule 1-012(B)(6).

{2} Having reviewed the complaint and applicable law, we conclude that Appellant's well-pleaded facts, while potentially sufficient to support a claim of negligence, are insufficient to establish a waiver of the governmental immunity granted by Section 41-4-4(A). Because Appellees are immune from suit under the facts of the case, Appellant has not stated a claim upon which relief may be granted.

Given this conclusion, we need not review Appellant's additional Rule 1-012(B)(6) argument. We affirm.

**BACKGROUND**

{3}     On or about January 1, 2012, Appellant was traveling on Highway 550 south of Bloomfield, New Mexico, when her vehicle struck a pedestrian, Jasper Lopez. Appellant, alleging negligence, brought this action for personal injuries and property damage against Appellees. Appellees filed a motion to dismiss that was granted by the district court. This appeal resulted. To avoid unnecessary repetition, we have incorporated Appellant's factual allegations into our discussion of Rule 1-012(B)(6).

**STANDARD OF REVIEW**

{4}     In reviewing a district court's dismissal of a complaint for failure to state a claim upon which relief can be granted, we "accept as true all facts well pleaded and question only whether the plaintiff might prevail under any state of facts provable under the claim." *Cal. First Bank v. State*, 1990-NMSC-106, ¶ 2, 111 N.M. 64, 801 P.2d 646 (internal quotation marks and citation omitted). In doing so, "the complaint must be construed in a light most favorable to [the non-moving party] and with all doubts resolved in favor of its sufficiency." *Pillsbury v. Blumenthal*, 1954-NMSC-066, ¶ 6, 58 N.M. 422, 272 P.2d 326.

**APPLICATION OF RULE 1-012(B)(6)**

{5}     New Mexico is a notice pleading state. *Zamora v. St. Vincent Hosp.*, 2014-NMSC-035, ¶ 10, 335 P.3d 1243. While this standard generally benefits plaintiffs in civil litigation, *see Credit Inst. v. Nutrition Corp.*, 2003-NMCA-010, ¶ 22, 133 N.M. 248, 62 P.3d 339 (holding that "our liberal rules of notice pleading do not require that specific evidentiary detail be alleged in the complaint"), Rule 1-012(B)(6) nonetheless requires application of the facts pleaded in the complaint to the applicable law. *Cal. First Bank*, 1990-NMSC-106, ¶ 2. This Court is required to make inferences in favor of the sufficiency of the complaint. *Pillsbury*, 1954-NMSC-066, ¶ 6. But, in doing so, we are not permitted to consider facts not pleaded in order to make a plaintiff's claim provable. *See Prot. and Advocacy Sys. v. City of Albuquerque*, 2008-NMCA-149, ¶ 17, 145 N.M. 156, 195 P.3d 1 ("[T]he court generally may not consider materials outside the pleadings on a [federal] Rule 12(b)(6) motion[.]").

**Appellant's Well-Pleaded Facts**

{6}     The sole count alleged in Appellant's complaint was for negligence resulting in personal injuries and property damage. This allegation of negligence was predicated upon Deputy Stevens' conduct with respect to Lopez, specifically his decision to leave Lopez unsupervised near Highway 550.

3

{7}     In support of this allegation, Appellant's complaint pleaded the following facts: (1) a motorist called 911 to report a potentially intoxicated pedestrian "wandering on" Highway 550; (2) the caller expressed concern that the pedestrian would be struck by passing traffic; (3) Deputy Stevens responded and contacted the pedestrian, Jasper Lopez; (4) Deputy Stevens took Lopez into his "custody and control" for the purpose of transporting him home; (5) Deputy Stevens received an emergency call related to a traffic accident; (6) Deputy Stevens told Lopez to exit the vehicle near a gas station along Highway 550; (7) Lopez did not enter the gas station, but instead reentered Highway 550, at which time he was struck by Appellant's vehicle; and (8) Appellant suffered property damage, physical injuries, and emotional injuries as a result of the collision.

{8}     Despite stating that Deputy Stevens took Lopez into his "custody and control[,]" the complaint did not state as fact that the roadside interaction between Deputy Stevens and Lopez resulted in Lopez being placed under custodial arrest for any crime, or that Lopez was being transported under the authority of the Detoxification Reform Act, NMSA 1978, §§ 43-2-1.1 to -23 (1976, as amended through 2005). Nor does the complaint state as fact that Lopez intentionally collided with Appellant's vehicle.

4

## WAIVER OF IMMUNITY UNDER THE TORT CLAIMS ACT

{9} As a general rule, governmental entities are immune from tort liability as provided in Section 41-4-4(A). *See* § 41-4-4(A) ("A governmental entity and any public employee while acting within the scope of duty are granted immunity from liability for any tort[.]"). This immunity is waived with respect to law enforcement officers acting within the scope of their duties by Section 41-4-12, which provides,

> [t]he immunity granted pursuant to [Section 41-4-4(A)] does not apply to liability for personal injury, bodily injury, wrongful death or property damage resulting from assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, defamation of character, violation of property rights or deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico[.]

{10} It is well-established that a law enforcement officer need not be the direct cause of injury to trigger a waiver of immunity under Section 41-4-12. *Blea v. City of Espanola*, 1994-NMCA-008, ¶ 14, 117 N.M. 217, 870 P.2d 755. Thus, even if a third party is the direct cause of an injury, the immunity granted by Section 41-4-4(A) is waived if a plaintiff "demonstrate[s] that the defendants were law enforcement officers acting within the scope of their duties, and that the plaintiff's injuries arose out of either a tort enumerated in [Section 41-4-12] or a deprivation of a right secured by law." *Weinstein v. City of Santa Fe ex rel. Santa Fe Police Dep't*, 1996-NMSC-021, ¶ 7, 121 N.M. 646, 916 P.2d 1313. It is, however, equally well-established that

5

the mere negligence of a law enforcement officer is insufficient to waive the tort immunity granted by Section 41-4-4(A) unless such negligence results in one of the torts enumerated in Section 41-4-12 or a deprivation of a statutory right. *See Blea*, 1994-NMCA-008, ¶ 12 ("[W]e continue to hold there is no waiver of immunity under Section 41-4-12 for mere negligence of law enforcement officers that does not result in one of the enumerated acts."); *Caillouette v. Hercules, Inc.*, 1992-NMCA-008, ¶ 18, 113 N.M. 492, 827 P.2d 1306 ("[T]he negligence complained of must cause a specified tort or violation of rights; immunity is not waived for negligence standing alone."). Against this backdrop, we determine whether Appellant's complaint pleaded facts sufficient to trigger a waiver of the immunity granted to Appellees by Section 41-4-4(A).

**Duty Owed to Appellant by Deputy Stevens**

{11} A common-law negligence claim "requires the existence of a duty from a defendant to a plaintiff, breach of that duty, which is typically based upon a standard of reasonable care, and the breach being a proximate cause and cause in fact of the plaintiff's damages." *Herrera v. Quality Pontiac*, 2003-NMSC-018, ¶ 6, 134 N.M. 43, 73 P.3d 181. Factual determinations related to breach of duty and proximate causation are properly left to the jury. *Lessard v. Coronado Paint & Decorating Ctr.*, 2007-NMCA-122, ¶ 27, 142 N.M. 583, 168 P.3d 155. However, whether a defendant

6

owes a duty to a plaintiff is a legal question to be determined by the court. *Lujan v. N.M. Dep't of Transp.*, 2015-NMCA-005, ¶ 8, 341 P.3d 1. Our Supreme Court recently clarified that "foreseeability is not a factor for courts to consider when determining the existence of a duty[.]" *Rodriguez v. Del Sol Shopping Ctr. Assocs.*, 2014-NMSC-014, ¶ 1, 326 P.3d 465. Under this standard, the existence of duty is policy, rather than fact driven. *Id.* ¶¶ 1, 3.

{12}   After being dispatched in response to a 911 call, Deputy Sanders located and contacted the allegedly intoxicated Lopez. Deputy Stevens took Lopez into his "custody and control[,]" for the purpose of transporting him home. After receiving an emergency call, Deputy Stevens let Lopez out of the vehicle near a gas station. Appellant argues that Deputy Stevens' decision to provide transportation to Lopez created a duty that was breached by his subsequent decision to terminate the transportation without ensuring that Lopez no longer posed a threat to himself or others.

{13}   In *Cross v. City of Clovis*, our Supreme Court held that "a law enforcement officer has the duty in any activity actually undertaken to exercise for the safety of others that care ordinarily exercised by a reasonably prudent and qualified officer in light of the nature of what is being done." 1988-NMSC-045, ¶ 6, 107 N.M. 251, 755 P.2d 589 (footnote omitted). Deputy Stevens actually undertook to transport Lopez.

Accepting all well-pleaded facts as true, we must view this undertaking as motivated by either a concern for the safety of Lopez himself or for that of other motorists on Highway 550. Under *Cross*, a reasonably prudent and qualified officer would not have released Lopez back into the dangerous situation from which he was initially removed.

{14} This determination does not, however, conclude our inquiry. As discussed in detail below, even if Deputy Stevens breached a duty owed to Appellant, the immunity granted by Section 41-4-4(A) is only waived if Appellant suffered a tort enumerated in Section 41-4-12 or a deprivation of a statutory right. *See Caillouette*, 1992-NMCA-008, ¶ 18 ("[T]he negligence complained of must cause a specified tort or violation of rights; immunity is not waived for negligence standing alone.").

**Waiver of Immunity Arising From the Commission of an Enumerated Tort**

{15} With respect to the torts enumerated in Section 41-4-12, the only one that could be reasonably inferred from the complaint is battery. Appellant argued, both in a pre-trial motion hearing and at oral argument before this Court, that Lopez's conduct—that is, the act of entering Highway 550 and colliding with Appellant's vehicle—constituted a battery. Appellant's brief in chief also argues that this case is analogous to *Blea*, in which an intoxicated driver caused a fatal traffic accident. 1994-NMCA-008, ¶ 6.

{16}      In *Blea*, Espanola Police Department officers were alerted to a disturbance at a local gas station and instructed to search for the suspect's vehicle. *Id.* ¶ 3. Within a few minutes, the vehicle was located and a traffic stop was conducted. *Id.* During this stop, the suspect was "extremely intoxicated" and "exhibited impaired judgment, impaired coordination, and inability to operate a motor vehicle in a safe and lawful manner." *Id.* ¶ 4. The suspect additionally admitted both consuming and possessing marijuana. *Id.* Instead of arresting the suspect, the officers ordered him to surrender the alcohol and marijuana in the vehicle and allowed him to continue driving his vehicle. *Id.* ¶¶ 4-5. The suspect subsequently caused a traffic accident, killing a young woman. *Id.* ¶ 6.

{17}      At trial in *Blea*, the district court ruled that immunity was not waived under Section 41-4-12 because neither the officers nor the suspect had the requisite intent to prove battery. *Blea*, 1994-NMCA-008, ¶ 13. This Court reversed, noting that our Supreme Court's discussion of battery in *California First Bank* was controlling. *Blea*, 1994-NMCA-008, ¶ 15 (citing *Cal. First Bank*, 1990-NMSC-106, ¶ 34, n.6).

{18}      "Battery is the unlawful, *intentional* touching or application of force to the person of another, when done in a rude, insolent or angry manner." NMSA 1978, § 30-3-4 (1963) (emphasis added). A tortfeasor is liable for battery if "(a) he acts intending to cause a harmful or offensive contact with the person of the other or a

third person, or an imminent apprehension of such a contact, and (b) an offensive contact with the person of the other directly or indirectly results." *State v. Ortega*, 1992-NMCA-003, ¶ 12, 113 N.M. 437, 827 P.2d 152 (internal quotation marks and citation omitted). The intent required to commit battery extends only to the physical touching at issue and not to the resulting harm. *See Peña v. Greffet*, 108 F.Supp.3d 1030, 1048 (D.N.M. 2015) ("As to the intent required to commit a battery, the Restatement (Second) of Torts is ambiguous whether intent means showing merely an intent to touch that person—and that the touching turns out to be offensive or harmful need not be intended—or if the plaintiff must also show that the harm or offense was intended. It is clear, however, that an intent to touch in a way that the defendant understands is not consented to is sufficient, as is an actual intent to harm."). *California First Bank*, which imputed the requisite intent to commit battery to drunk drivers, and its progeny stand as exceptions to the general rule that both the crime and tort of battery require proof of intent. *See* 1990-NMSC-106, ¶ 34, n.6 (stating that the intent element of battery is satisfied if "the actor believes that the consequences are substantially certain to result from the action taken." (alteration, internal quotation marks, and citation omitted)); *Blea*, 1994-NMCA-008, ¶ 15 ("[A]n allegation that a party is intentionally intoxicated and driving could be sufficient

intent for battery because all that is necessary is the party's substantial certainty that a particular result will occur.").

{19} While the rationale of *California First Bank*'s footnote six clearly applies to intoxicated drivers, it is inapplicable to the facts of the present case. Lopez was not an intoxicated driver, but instead, an intoxicated pedestrian. To impute the intent to commit a battery to Lopez, as our Supreme Court discussed in *California First Bank*, we must conclude that injury to a passing motorist was a "substantially certain outcome" of Lopez's conduct. 1990-NMSC-106, ¶ 34, n.6. We are unwilling to draw this conclusion. *See State v. Jones*, 895 P.2d 643, 644 (Nev. 1995) ("[I]ntoxicated pedestrians do not present the serious public safety hazard that results from drunk drivers.").

{20} Lopez's decision to enter Highway 550 in an allegedly intoxicated state led to an accidental collision and to his untimely death. However, even reading the complaint in the manner most favorable to Appellant as required by Rule 1-012(B)(6), we are unable to infer intent on the part of Lopez to cause a collision as required to support a claim of battery under New Mexico law. Because Appellant did not suffer a battery, or any other enumerated tort, Appellees' immunity from tort liability granted by Section 41-4-4(A) is not waived on this theory.

11

**Waiver of Immunity Arising From the Deprivation of a Statutory Right**

{21} Appellant argues in the alternative that her injuries resulted from a deprivation of a statutory right. "Section 41-4-12 of the Tort Claims Act waives immunity when injury has resulted from a deprivation of any right secured by the statutory law of the United States or New Mexico . . . if caused by a law enforcement officer." *Cal. First Bank*, 1990-NMSC-106, ¶ 32 (internal quotation marks omitted). A plaintiff may bring a "direct claim for personal injury . . . arising from a violation of a statutory right." *Weinstein*, 1996-NMSC-021, ¶ 26. Such personal injury need not arise from one of the torts enumerated in Section 41-4-12. *See Weinstein*, 1996-NMSC-021, ¶ 26 (citing favorably the proposition that damages for emotional distress are recoverable under Section 41-4-12 if arising from a violation of a statutory right). NMSA 1978, Section 29-1-1 (1979), which requires that law enforcement officers "investigate all violations of the criminal laws of the state which are called to the attention of any such officer or of which he is aware," is commonly invoked to demonstrate the deprivation of a statutory right and has been described by our Supreme Court as "designed to protect individual citizens from harm." *Weinstein*, 1996-NMSC-021, ¶ 37.

{22} For example, in *California First Bank*, deputies observed an intoxicated individual, Harrison Shorty, fire several gun shots outside a bar in Gallup, New

Mexico. 1990-NMSC-106, ¶ 3. Despite observing conduct in violation of New Mexico law, the deputies elected not to arrest Shorty.[1] *Id.* Shorty subsequently left the bar and, while driving through a marked intersection, crossed the center line and collided with another vehicle, killing three people. *Id.* ¶ 4. Applying Section 29-1-1, our Supreme Court held that the deputies' failure "to apprehend Shorty or investigate the disturbance at [the] bar" proximately caused the injuries and constituted "a negligent violation of a right secured under New Mexico law[.]" *Cal. First Bank*, 1990-NMSC-106, ¶ 37. Since *California First Bank*, our appellate courts have applied Section 29-1-1 in this manner. *See, e.g.*, *Blea*, 1994-NMCA-008, ¶¶ 4-6, 19 (applying Section 29-1-1 in holding tort immunity to be waived when law enforcement officers detained but failed to arrest an "extremely intoxicated" driver who, later the same evening, caused a collision that killed a young woman); *Weinstein*, 1996-NMSC-021, ¶¶ 3, 38 (applying Section 29-1-1 in holding tort immunity to be waived when law enforcement officers' failure to diligently file a criminal complaint resulted in the release of a rape suspect who subsequently raped the plaintiffs' daughter).

---

[1]*See* NMSA 1978, § 30-7-4 (1979, amended 1993) (prohibiting the negligent use of a deadly weapon).

{23} Appellant argues that Deputy Stevens' failure to detain or arrest the allegedly intoxicated Lopez constituted a breach of a statutory duty imposed by Section 29-1-1. Given the pleaded facts, Deputy Stevens' duty to detain or arrest could arguably derive from either the Detoxification Reform Act or the Motor Vehicle Code, NMSA 1978, §§ 66-1-1 to -8-141 (1978, as amended through 2015). We discuss the interplay between these statutes and Section 29-1-1 in turn.

**A.     The Detoxification Reform Act**

{24} Appellant's complaint alleged that Lopez was "wandering on" Highway 550 in an intoxicated state. *See Cal. First Bank*, 1990-NMSC-106, ¶ 2 (requiring this Court to accept as true all well-pleaded facts in the complaint). Our Legislature has not enacted a criminal statute prohibiting public intoxication. *See* § 43-2-3 ("It is the policy of this state that intoxicated and incapacitated persons may not be subjected to criminal prosecution, but rather should be afforded protection."). As such, Lopez was not in violation of a criminal statute, and therefore subject to custodial arrest, simply because he was intoxicated.

{25} In her reply brief and during oral argument before this Court, Appellant argued that the Detoxification Reform Act creates a duty on the part of law enforcement officers to detain and transport intoxicated persons to safety. We disagree. Section 43-2-8(A)(1)-(7) provides that

14

> [a]n intoxicated or incapacitated person *may* be committed to a treatment facility at the request of an authorized person for protective custody, if the authorized person has probable cause to believe that the person to be committed:
>
> > (1)    is disorderly in a public place;
> > (2)    is unable to care for the person's own safety;
> > (3)    has threatened, attempted or inflicted physical harm on himself or another;
> > (4)    has threatened, attempted or inflicted damage to the property of another;
> > (5)    is likely to inflict serious physical harm on himself;
> > (6)    is likely to inflict serious physical harm on another; or
> > (7)    is incapacitated by alcohol or drugs.

(Emphasis added). The Legislature's use of the permissive "may" rather than the mandatory "shall" indicates the discretionary nature of a law enforcement officer's authority under Section 43-2-8(A). *See Cerrillos Gravel Prods., Inc. v. Bd. of Cty. Comm'rs of Santa Fe Cty.*, 2004-NMCA-096, ¶ 10, 136 N.M. 247, 96 P.3d 1167 ("The word 'may' is permissive, and is not the equivalent of 'shall,' which is mandatory."). In *State v. Phillips*, this Court held that Section 43-2-8(A) provided law enforcement officers with "actual authority" to take intoxicated persons into protective custody. 2009-NMCA-021, ¶ 23, 145 N.M. 615, 203 P.3d 146. Contrary to Appellant's argument, however, *Phillips* makes no comment on a law enforcement officer's obligation to do so. *See generally id.*

{26}    Because Deputy Stevens was under no statutory obligation to detain or transport Lopez under Section 43-2-8(A), his decision to discontinue such

15

transportation cannot constitute a deprivation of a statutory right imposed by Section 29-1-1.[2] Because Deputy Stevens' conduct did not breach a statutory duty owed to Appellant, Appellees' immunity from tort liability granted by Section 41-4-4(A) is not waived on this theory.

**B.     The Motor Vehicle Code**

{27}     Appellant additionally argues that Deputy Stevens' failure to arrest Lopez for violations of the Motor Vehicle Code constituted a breach of a statutory duty imposed by Section 29-1-1. We review the Motor Vehicle Code to determine whether Lopez's alleged conduct justified his being placed under custodial arrest by Deputy Stevens.

{28}     Applying again the language of the complaint, violation of certain traffic statutes would subject Lopez to citation for "wandering on" Highway 550. *See* § 66-7-339 (describing required conduct while walking along highways that lack sidewalks); Section 66-7-334(B) (prohibiting pedestrians from "walk[ing] or run[ning] into the path of a vehicle"). However, a violation of one or both of these statutes, particularly a violation that was not witnessed by a law enforcement officer, would not subject Lopez to custodial arrest. *See* NMSA 1978, § 66-8-123 (2013) (requiring,

---

[2]While Deputy Stevens' decision to transport Lopez could be interpreted as action under Section 43-2-8(A), Appellant's factual allegations contradict this argument. Section 43-2-8(A) authorizes a law enforcement officer to transport an intoxicated or incapacitated person to "a treatment facility." Appellant's complaint alleged that Deputy Stevens was transporting Lopez "home."

16

subject to specific exceptions, that an individual arrested for a misdemeanor violation of the Motor Vehicle Code be cited and released); *State v. Reger*, 2010-NMCA-056, ¶ 13, 148 N.M. 342, 236 P.3d 654 ("The [misdemeanor arrest] rule provides that generally, in New Mexico, an officer may execute a warrantless misdemeanor arrest only if the offense was committed in the officer's presence." (alteration, internal quotation marks, and citation omitted)).

{29} Cases cited by Appellant, including *Blea* and *Torres v. State*, 1995-NMSC-025, ¶ 24, 119 N.M. 609, 894 P.2d 386 (holding that the duty to investigate applied to a specific murder suspect), in support of her argument that Deputy Stevens breached a statutory duty imposed by 29-1-1 are distinguishable. In *Blea*, the defendant officers had probable cause to arrest the suspect for numerous statutory violations during the initial traffic stop; a course of action that would have removed a significant threat to the public from the roadways. 1994-NMCA-008, ¶ 19. Similarly, in *Torres*, our Supreme Court held that the defendant officers had a statutory duty to investigate a specific murder suspect prior to his flight to Los Angeles where he murdered two additional people. 1995-NMSC-025, ¶¶ 6, 25.

{30} In the present case, Deputy Stevens investigated a report of a potentially intoxicated pedestrian "wandering on" Highway 550. Applying these facts as pleaded,

17

Deputy Stevens lacked statutory authority to place Lopez under custodial arrest for a violation of the Motor Vehicle Code.

{31} Absent the authority to place Lopez under custodial arrest for a statutory violation, Deputy Stevens did not breach a statutory duty imposed by Section 29-1-1 by releasing Lopez from his vehicle. Because Deputy Stevens' conduct did not breach a statutory duty owed to Appellant, Appellees' immunity from tort liability granted by Section 41-4-4(A) is not waived on this theory.

**CONCLUSION**

{32} Because Appellant's complaint did not allege facts sufficient to establish a waiver of the governmental immunity granted by Section 41-4-4(A), Appellees are immune from tort liability. We therefore affirm the district court's Rule 1-012(B)(6) dismissal.

{33} **IT IS SO ORDERED.**

_____
**JAMES J. WECHSLER, Judge**

**WE CONCUR:**

_____

**MICHAEL E. VIGIL, Chief Judge**

_____

**STEPHEN G. FRENCH, Judge**